William JOHNSON and Joan Johnson, his wife, Appellants and Cross-Appellees,

v.

McCRACKIN–STURMAN FORD, INC., and Ford Motor Credit Company, Inc., Appellees and Cross-Appellants.

Nos. 75–1659, 75–1661.

United States Court of Appeals, Third Circuit.

Argued Oct. 3, 1975.

Decided Dec. 16, 1975.

Lewis M. Taffer, Pittsburgh, Pa., for appellants and cross-appellees.

Gilbert J. Helwig, Joseph Van Buskirk, Reed, Smith, Shaw & McClay, Alexander C. Sherrard, Campbell, Thomas & Burke, Henry W. Fulton, Jr., Kenney, Stevens, Clark & Semple, Pittsburgh, Pa., for appellee, McCrackin-Sturman Ford, Inc.

Edwin L. Klett, Robert W. Doty, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Ford Motor Credit Co.

Before VAN DUSEN, MARIS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal presents a question of great importance to consumers and to persons and institutions extending consumer credit in the United States. We are called upon to determine whether the Truth in Lending Act[1] and Regulation Z[2] thereunder require a creditor to disclose an acceleration clause where state law provides that the creditor must rebate the unearned portion of the finance charge.[3]

### I

On January 20, 1973, William and Joan Johnson (hereinafter "plaintiffs") purchased a used Ford automobile from McCrackin-Sturman Ford, Inc., (hereinafter "McCrackin-Sturman"). In order to finance the purchase of the automobile, plaintiffs entered into a retail installment contract with McCrackin-Sturman under which plaintiffs were required to pay the purchase price of the vehicle, less a down payment, and finance and other charges in 30 monthly installments. A copy of the contract and

1. Consumer Credit Protection Act §§ 102–45, 15 U.S.C. §§ 1601–65 (1970).

2. Federal Reserve Board Truth in Lending Act Regulations (Regulation Z), 12 C.F.R. §§ 226.1–.1002 (1975).

3. We emphasize that we are not here confronted with the question whether the Truth in Lending Act or Regulation Z require disclosure of an acceleration provision under which the creditor is not required to rebate the unearned finance charge.

a disclosure statement setting forth certain of the terms of the contract were delivered to the Johnsons at the time of sale.

The contract, but not the disclosure statement, contained the following provision concerning McCrackin-Sturman's right to accelerate payment:

20. DEFAULT

Time is of the essence of this contract. *In the event Buyer defaults in any payment*, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any other provision hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or Seller deems the Property in danger of misuse of confiscation, *Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable* and Seller shall have all the rights and remedies of a Secured party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale. Upon request, Buyer shall deliver the Property to Seller at a place designated by Seller. Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for any deficiency. Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours aft-

er repossession. Buyer agrees to pay reasonable attorneys' fees (15% if permitted by law) and other expenses incurred by Seller in effecting collection, repossession or resale hereunder. Seller's remedies hereunder are in addition to any given by law and may be enforced successively or concurrently. Waiver by Seller of any default shall not be deemed a waiver of any other default. App. at 9a (emphasis added).

The disclosure statement contained a provision delineating the charges that would be assessed against plaintiffs in the event of late payment of an installment, but this provision did not treat the remedies provided in paragraph 20, *supra*, as charges payable in the event of late payment.[4] The disclosure statement also set forth the method for computing the portion of the finance charge that would be rebated if plaintiffs prepaid their obligation.[5]

After acceptance of the contract, it was assigned by McCrackin-Sturman to the Ford Motor Credit Company (hereinafter "Ford Motor Credit"). Plaintiffs made none of the payments required under the contract, and the automobile was ultimately repossessed by Ford Motor Credit in accordance with its rights under paragraph 20, *supra*.

In June 1973, plaintiffs instituted this action in the United States District Court for the Western District of Pennsylvania. The complaint alleged that the disclosure statement delivered to the plaintiffs did not comply with the Truth in Lending Act and Regulation Z thereunder, and sought statutory damages for the inadequate credit disclosures. All

---

4. This provision stated:

(13) Delinquency Charges: Buyer may be required to pay a delinquency charge of 2% of any instalment in default for each month, or fraction thereof in excess of 10 days, that such instalment is in default, plus such expenses incurred by Seller in effecting collection under the Contract as may be allowed by law.

App. at 8a.

5. Paragraph 15 provided:

(15) Prepayment Rebate: Buyer may prepay his obligations under the Contract in full at any time prior to maturity of the final instalment thereunder, and, if he does so, shall receive a rebate of the unearned portion of the Finance Charge computed under the sum of the digits method subject to retention by Seller of a minimum finance charge of $10.00. No rebate will be made if the amount is less than $1.00.

App. at 8a.

parties moved for partial summary judgment.

On May 23, 1974, the district court granted plaintiffs' motion for summary judgment against McCrackin-Sturman. 381 F.Supp. 153, 156 (W.D.Pa. 1974). The court held that McCrackin-Sturman's failure to set forth the acceleration provision in the disclosure statement was a violation of section 1ᴢ8(a)(9) of the Truth in Lending Act, 15 U.S.C. § 1638(a)(9) (1970), and of section 226.-8(b)(4) of Regulation Z, 12 C.F.R. § 226.-8(b)(4) (1975). Because of its holding concerning disclosure of the acceleration clause, the court found it unnecessary to consider the other alleged violations of the Act. Plaintiffs' motion for summary judgment against Ford Motor Credit was denied without prejudice. McCrackin-Sturman's and Ford Motor Credit's motions for summary judgment were denied.

On June 21, 1974, McCrackin-Sturman and Ford Motor Credit appealed from the district court's order of May 23, 1974 and, thereafter, plaintiffs cross-appealed from the denial of summary judgment against Ford Motor Credit. On March 4, 1975, this court dismissed the appeals for lack of an appealable order, without prejudice to the rights of the parties to apply to the district court for a determination and direction under *Federal Rule of Civil Procedure* 54(b). The district court, on April 16, 1975, amended its earlier order of May 23, 1974 by adding a further paragraph 4 as follows:

> 4. Because there is no just reason for delay, it is directed that the judgment entered against McCrackin-Sturman Ford, Inc. pursuant to this Order be a final judgment.

Thereafter, all parties appealed from the district court's amended May 23, 1974, order. Because only the grant of summary judgment against McCrackin-Sturman was certified as a final judgment under rule 54(b), we must dismiss the appeals from the other rulings contained in the May 23, 1974, order for lack of an appealable order. Fed.R.Civ.P. 54(b). As to the district court's order granting summary judgment against McCrackin-Sturman, we reverse.

## II

The Truth in Lending Act provides for full disclosure of credit terms rather than regulation of the terms or conditions under which credit may be extended. H.R.Rep.No.1040, 90th Cong., 2d Sess. (1968). Enacted because of the divergent, and often fraudulent, practices by which credit customers were apprised of the terms of the credit extended to them,[6] the Act's avowed purpose is to assure credit customers a meaningful disclosure of credit terms, thus enabling these consumers to compare more readily the various available credit terms and thereby to avoid the uninformed use of credit. 15 U.S.C. § 1601 (1970); *see Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974). The Act is a remedial statute that should be construed liberally to ensure achievement of these goals. *N. C. Freed Co. v. Board of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973).

Disclosure is a term of art under the Truth in Lending Act. The Act and Regulation Z provide that as an incident to the extension of credit, the creditor must, in most instances, furnish the credit customer with a separate disclosure statement.[7] This separate statement must set forth, in a straightforward manner and in a meaningful sequence, certain of the terms under which

---

**6.** 2 U.S.Code Cong. & Admin.News pp. 1962, 1964, 1970 (1968). See Jordan & Warren, *A Proposed Uniform Code for Consumer Credit*, 8 B.C.Ind. & Com.L.Rev. 441, 441–49 (1967) for a discussion of the historical background of consumer credit regulation in the United States.

**7.** 15 U.S.C. §§ 1631(a), 1637, 1638, 1639 (1970); 12 C.F.R. §§ 226.7, 226.8 (1975).

the credit is extended. It is hoped that the credit customer, armed with a list of the credit terms considered most important by Congress, will be well equipped to choose the credit contract that best fits his needs and his ability to repay the loan.

Section 128(a)[8] of the Act and section 226.8(b)[9] of Regulation Z govern disclosure of credit terms in connection with a consumer credit sale not under an open credit plan, the context in which the plaintiffs received credit from McCrackin-Sturman. No provision of either of the sections specifically requires disclosure of a creditor's right to accelerate payment upon default. However, plaintiffs argue, and the district court held, that the failure of McCrackin-Sturman to refer to the acceleration clause in the disclosure statement violated section 128(a)(9) of the Act, which requires disclosure of "default, delinquency, or similar charges payable in the event of late payments," and section 226.8(b)(4) of Regulation Z, which provides for disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

The district court concluded that acceleration of the loan was a "charge" within the meaning of sections 128(a)(9) and 226.8(b)(4). 381 F.Supp. at 156. In reaching that conclusion, the court relied on *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill.1972), the only prior case that had dealt directly with this issue. The court below, which found the reasoning of the *Garza* court applica-

---

8. Section 128 provides:

(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose . . .

(1) The cash price of the property or service purchased.

(2) The sum of any amounts credited as down-payment (including any trade-in).

(3) The difference between the amount referred to in paragraph (1) and the amount referred to in paragraph (2).

(4) All other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge.

(5) The total amount to be financed (the sum of the amount described in paragraph (3) plus the amount described in paragraph (4)).

(6) Except in the case of a sale of a dwelling, the amount of the finance charge . .

(7) The finance charge expressed as an annual percentage rate . . .

(8) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness.

(9) The default, delinquency, or similar charges payable in the event of late payments.

(10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

15 U.S.C. § 1638(a) (1970).

9. Section 226.8(b) provides in pertinent part:

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

(1) The date on which the finance charge begins to accrue if different from the date of the transaction.

(2) The finance charge expressed as an annual percentage rate, using the term "annual percentage rate," except in the case of a finance charge . . .

(3) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness and . . .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit . . .

(6) A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full . . . and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. . . .

12 C.F.R. § 226.8(b) (1975).

ble to the instant case and its decision "authoritative," stated:

> After noting that the word charge was nowhere defined in the Act or regulations, the [*Garza*] Court accorded the word its usual meaning of "an obligation" or "claim" and went on to hold that:
>
>> "Considering these definitions and the purpose of the statute and regulation to inform consumers of credit costs and terms so they can effectively choose between sources of credit (TIL § 102, 15 U.S.C. § 1601), it seems clear that the acceleration of the balance of the debt should be considered a 'charge' . . . ." Id. at 959.[10]

To the district court, a creditor's right to accelerate payment upon default was precisely the "type of disclosure that the Truth-in-Lending Act was intended to require." 381 F.Supp. at 156.[11]

### III

An understanding of the nature of the right of acceleration in general and of McCrackin-Sturman's right in particular is essential to the question whether that right constitutes "default,

delinquency or similar charges" within the meaning of section 128(a)(9) of the Truth in Lending Act.

We dare say there is probably not an installment contract in force today that does not contain a clause granting the creditor the right to require immediate payment of all installments upon the happening of a specified event, usually a default in repayment of the loan. Exercise of that right by the creditor shortens, sometimes dramatically, the time period during which the borrower would normally be able to repay the loan. The purpose of such a provision is obvious. Without the right to accelerate payment, the creditor would be forced to sue each month as each installment payment became due and as the borrower defaulted on the installment, a course of action that is both commercially unreasonable and, in all probability, quite expensive to the borrower since he might be liable for 24 or 30 different sets of court costs. Except that a specified event in the condition precedent to its exercise, a creditor's right of acceleration is, in essence, akin to the borrower's right of prepayment.

Absent a provision to the contrary, a creditor receives a windfall when he ac-

---

**10.** 381 F.Supp. at 155.

**11.** Since the lower court's decision, many district courts have confronted this issue, although our research has disclosed no court of appeals decision dealing with the question presented by this appeal. *See, e. g., Morris v. First Nat'l Bank,* 4 CCH Consumer Credit Guide ¶ 98,568 (N.D.Ga. July 1, 1975); *McDaniel v. Fulton Nat'l Bank,* Civ. No. C74-244A, 395 F.Supp. 422 (N.D.Ga.1975); *Barrett v. Vernie Jones Ford, Inc.,* Civ. No. C74-1502A, 395 F.Supp. 904 (N.D.Ga. May 8, 1975); *Houston v. Atlanta Fed. Sav. & Loan Assoc.,* Civ. No. C74-119-A (N.D.Ga. Mar. 25, 1975); *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga. Mar. 5, 1975); *Barksdale v. Peoples Financial Corp.,* 395 F.Supp. 112 (N.D.Ga. 1975); *Meyers v. Clearview Dodge Sales, Inc.,* Civ. No. 73-963 (E.D.La. Dec. 20, 1974); *Washington Motor Sales v. Ferreira,* 4 CCH Consumer Credit Guide ¶ 98,688 (Essex Co., N.J. District Court Dec. 9, 1974); *Grant v. Imperial Motors,* Civ. No. 3146 (S.D.Ga. Dec. 4, 1974); *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.1974); *Hamlet v. Beneficial Finance Co.,* Civ. No. C74-821 (N.D.Ga.

Recommendations of Special Master, Nov. 4, 1974); *McDaniel v. Fulton Nat'l Bank,* 4 CCH Consumer Credit Guide ¶ 98,683 (N.D.Ga. Sept. 19, 1974); *Barksdale v. Peoples Financial Corp.,* 4 CCH Consumer Credit Guide ¶ 98,738 (N.D.Ga. Recommendations of Special Master, Sept. 5, 1974); *Pollock v. Avco Financial Serv., Inc.,* 4 CCH Consumer Credit Guide ¶ 98,766 (N.D.Ga. Recommendations of Special Master, July 1, 1974); *Hall v. Sheraton Galleries,* 4 CCH Consumer Credit Guide ¶ 98,737 (N.D.Ga. Recommendations of Special Master, Mar. 21, 1974); *Pugh v. Am. Tractor Trailer Training, Inc.,* Civ. No. 14,109 (D.Conn. Apr. 10, 1974).

Recently, another judge of the United States District Court for the Western District of Pennsylvania, taking a position contrary to that which we here review, held that the Truth in Lending Act does not require inclusion in the disclosure statement of an acceleration clause similar to the one contained in paragraph 20 of the McCrackin-Sturman contract. *See Jones v. East Hills Ford Sales, Inc.,* 398 F.Supp. 402, 404 (W.D.Pa.1975).

celerates payment of a contractual obligation because the accelerated debt obligation includes an unearned finance charge. This results from the fact that the finance charge on the stated debt was computed on the basis of the full credit period until maturity, which period has now been shortened. To remedy this inequitable result, the laws of many states, and some contracts, require the creditor to rebate to the borrower the unearned portion of the finance charge or to credit his obligation for this amount.[12] Under such a requirement, all the borrower need pay upon acceleration is the unpaid portion of the principal obligation. This is the situation in the case *sub judice*. If McCrackin-Sturman had exercised its right to accelerate payment, it would have been required under Pennsylvania law to rebate immediately to plaintiffs the entire unearned portion of the finance charge.[13] Plaintiffs would have been obligated to pay only the unpaid principal.

We are of the opinion that McCrackin-Sturman's right to accelerate payment of the unpaid principal does not come within the meaning of the phrase "default, delinquency, or similar charges" in section 128(a)(9) of the Truth in Lending Act. The lower court and the *Garza* court focused on the word "charges" in the phrase "default, delinquency, or similar charges." Noting that "charges" was nowhere defined in the Act or in the regulations, the district court relied on what it considered to be the "usual" meaning of that term, an obligation. This reasoning, however, ignores the fact that the words "default, delinquency, or similar" modify the term "charges." In considering the word "charges" apart from the language that modifies it, the lower court not only used a method of analysis which is inconsistent with well established principles of statutory interpretation[14] but also derived a definition of that term which does not comport with the purpose of section 128(a)(9).

Neither the Truth in Lending Act nor its legislative history define the phrase "default, delinquency, or similar charges." However, prior to enactment of the Act, the terms "default charges" and "delinquency charges" had well established meanings in the commercial credit field and in other consumer credit legislation,[15] and it is certain that Congress was well aware of these definitions. Since the legislative history of the Act indicates that Congress intended to enact remedies that reflected commercial realities,[16] we presume that Congress

12. *See, e. g.*, Uniform Consumer Credit Code § 3.210, 1 CCH Consumer Credit Guide ¶ 5190 (1975).

13. Pennsylvania Motor Vehicle Sales Finance Act § 22(B), 69 P.S. § 622(B) (1965). Section 622(B) provides as follows:

> Whenever all the time balance is liquidated prior to maturity by prepayment, refinancing or termination by surrender or repossession and re-sale of the motor vehicle, the holder of the installment sale contract shall rebate to the buyer immediately the unearned portion of the finance charge. Rebate may be made in cash or credited to the amount due on the obligation of the buyer.

> The acceleration clause contained in paragraph 20 of the McCrackin-Sturman contract does not expressly state that the unearned portion of the finance charge will be rebated. Nevertheless, we find that the contract incorporated Pennsylvania's rebate provision as a term of the acceleration clause. *See* discussion *infra* at pages 268–269.

14. The meaning of a word is known from the words that accompany it, *noscitur a sociis*.

*Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961).

15. *See generally* Curran, Trends in Consumer Credit Legislation 71–72 (1965) (American Bar Foundation study of consumer credit published two years before the original Senate version of the Truth in Lending Act was introduced).

16. *Stavrides v. Mellon Nat'l Bank & Trust Co.*, 353 F.Supp. 1072, 1078–79 (W.D.Pa.), *aff'd*, 487 F.2d 953 (3d Cir. 1973); *see e. g.*, S.Rep. No.392, 90th Cong., 1st Sess. 1–2 (1967); *id.* at 23 (statement of Rep. Wallace F. Bennett); Hearings on S. 750 before the Subcomm. on Production & Stabilization of the Senate Comm. on Banking & Currency, 88th Cong., 1st & 2d Sess., pt. 2, 1303 (1963–1964) (Letter from Paul R. Dixon, Chairman of the Federal Trade Commission advising that whatever consumer credit legislation was passed had to deal with the methods by which credit was currently extended); 2 U.S.Code Cong. & Admin.News 1980–1981 (1968) (definitions of many terms used in the Act are based on the established meaning of those terms in the finance industry).

meant to ascribe to the terms "default charges" and "delinquency charges" the generally accepted meanings of these terms in the consumer credit industry.[17]

In the commercial credit field and in other consumer credit legislation, the terms "delinquency charges" and "default charges" generally refer to specific pecuniary sums that are assessed against the borrower solely because of his failure to make his payments in a timely manner. They are sums above and beyond the amount ordinarily due in the event of timely payment. The *Consumer Credit Guide*, a widely-used source in the consumer credit field, defines "delinquency charges" as follows:

> Delinquency charges . . . are the compensation a creditor receives on a precomputed contract for the debtor's delay in making instalment payments.
>
> \* \* \* \* \* \*
>
> Because a precomputed contract is the only one prepared on the assumption that the debtor will make all payments when due, the creditor is left without any income for a period where payment is delayed. *In lieu of accelerating the maturity of the entire obligation*, the creditor may make an appropriate charge just for the delay on the particular instalment.[18]

The Pennsylvania Motor Vehicle Sales Act, a representative consumer credit statute, defines "default charge" as follows:

> A default charge may be collected on any installment payment or payments which are not paid on or before the due date of such payments. Such default charge shall not exceed the rate of two percent (2%) per month on the amount of the payment or payments in arrears. . . . Such default charges may be collected, when earned, during the term of the contract, or may be accumulated and collected at final maturity, or at the time of final payment under the contract. *Such default charge shall not be collected on any payment in default because of any acceleration provision in the contract.*[19]

Thus, we conclude that the phrase "default, delinquency and similar charges" in section 128(a)(9) of the Truth in Lending Act mandates disclosure only of specific monetary sums, in addition to the amounts already due under the loan, that are imposed because of late payment of an installment or installments. A right of acceleration under which the creditor must rebate the unearned portion of the finance charge is not encompassed within the disclosures required by section 128(a)(9).[20] When a creditor is required to rebate the unearned portion of the finance charge upon acceleration, the result is a shortening of the time for repayment of the principal, not the assessment of an additional penalty charge. *Morris v. First Nat'l Bank*, 4 CCH Consumer Credit Guide ¶ 98,568 (N.D.Ga. July 1, 1975). The borrower incurs no cost other than that disclosed on the face of his credit contract. The creditor is merely given the right to pursue his remedies against the defaulting borrower without awaiting the expiration of the term of the contract. *McDaniel v. Fulton Nat'l Bank*, 4 CCH Consumer Credit Guide, ¶ 96,683 (N.D.Ga. Sept. 19, 1974).

 Plaintiffs assert that because the borrower must pay the total amount of the loan immediately rather than over

---

17. *Cf. Corning Glass Works v. Brennan*, 417 U.S. 188, 202, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

18. 1 CCH Consumer Credit Guide ¶¶ 4230, 4231 (1971) (emphasis added). *See also* Uniform Consumer Credit Code § 2.203, 1 CCH Consumer Credit Guide ¶ 5063 (1975) (similar definition of "delinquency charges").

19. § 21(A), 69 P.S. § 621(A) (1965) (emphasis added). *See generally* 1–3 CCH Consumer Credit Guide (1971) (compilation of state consumer credit statutes); Brief for Ford Motor Credit Co. at App. 1a–4a (citations to all state consumer credit statutes with similar definitions of "delinquency charges" and "default charges").

20. *See* note 3 *supra*.

a period of months, acceleration, even of only the unpaid principal, is in essence a penalty for default that Congress, by enacting section 128(a)(9), meant to be disclosed. Certainly, the shortening of time for repayment of the principal may be a burden to the borrower. But it is not a tangible pecuniary sum assessed because of his default and in addition to the amounts he is already obligated to pay. Acceleration in this limited sense is a remedy, not a charge. The exercise of this right may cause additional expense or burden to the borrower, directly or indirectly, but, at least as long as any unearned finance charge is rebated, it is not a "default, delinquency or similar charge" within the meaning of section 128(a)(9). See *Morris, supra.*

Our conclusion in this regard is buttressed by both the language of the regulation implementing section 128(a)(9) and by the Federal Reserve Board Staff Opinion Letter interpreting the regulation. Section 226.8(b)(4) of Regulation Z requires disclosure of the "amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." The use of the words "amounts, or method of computing the amount," clearly refers to specific pecuniary sums assessed because of default. The right to accelerate the unpaid principal is a remedy for default and is not an "amount" in the sense that that term is used in section 226.8(a)(4).

On October 22, 1974, subsequent to the district court's opinion, the staff of the Federal Reserve Board issued an opinion letter that considered the question whether section 226.8(b)(4) of Regulation Z required disclosure of a creditor's right of acceleration.[21] Frederic Solomon, Director of the Office of Saver and Consumer Affairs stated that if, under an acceleration provision, the creditor must rebate the unearned portion of the finance charge, there was no "*additional* 'charge'" and no need to disclose the provision under section 226.8(b)(4).[22] Because of the broad powers granted to it under the Truth in Lending Act, the Federal Reserve Board's interpretation of its own regulations are entitled to great weight.[23] *Mourning v. Family Publication Serv., Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971 (5th Cir. 1974); *Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974); *see Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Charnita, Inc. v. F.T.C.,* 479 F.2d 684 (3d Cir. 1973).

---

21. Federal Reserve Board Staff Opinion Letter No. 851, 4 CCH Consumer Credit Guide ¶ 31,-173 (Oct. 22, 1974).

22. The letter states, in pertinent part:

. . . . .

For the purposes of Truth in Lending disclosures, this staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such, the disclosure provisions of § 226.8(b)(7) of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that no rebate would be made, apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth in Lending Act.

If, under the acceleration provision, a rebate is made by the creditor in accordance with the disclosure of the rebate provisions of § 226.8(b)(7), we believe that there is no additional "charge" for late payments made by the customer and therefore no need to disclose under the provisions of § 226.-8(b)(4). On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.-8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a "charge" which should be disclosed under § 226.8(b)(4).

23. While this interpretation is that of the Federal Reserve Board Staff and not that of the Board itself, we note that Staff opinions are to be considered the opinion of the Board until it rules to the contrary. *See* Federal Reserve Board Staff Opinion Letter of Mar. 1, 1971, [Transfer Binder] CCH Consumer Credit Guide ¶ 30,640. *See also Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971 (5th Cir. 1974) (Staff's opinion letters entitled to great weight).

We are of the opinion that the Board Staff's interpretation of section 226.-8(b)(4) is a reasonable one and agree that when a creditor is required to rebate the unearned portion of the finance charge, his right of acceleration is not a "default, delinquency or similar charge."

We recognize that several courts have found an acceleration clause similar to that contained in paragraph 20 to be a "default, delinquency or similar charge" within the meaning of section 128(2)(9) of the Act or of section 226.8(b)(4) of Regulation Z.[24] Many of these courts adopted the reasoning of the district court and looked only to the dictionary meaning of the term "charge." Our disapproval of that definition of the phrase "default, delinquency or similar charges" is indicated above. Further, we note that since the issuance of the Federal Reserve Board Staff's interpretation of regulation section 226.8(b)(4), only one court has refused to adopt the view that when the creditor rebates unearned interest, the right of acceleration is not a "default, delinquency or similar charge." *See Meyers v. Clearview Dodge Sales, Inc.,* Civ. No. 73–963 (E.D.La. Dec. 20, 1974).

■■■■ Plaintiffs contend that even accepting our view that where there is a rebate of the unearned finance charge the right of acceleration need not be disclosed, paragraph 20, on its face, does not provide for a rebate of the unearned interest. Plaintiffs assert that we should determine whether this acceleration clause should have been disclosed by examination of the express language of paragraph 20 and that the Pennsylvania law requiring a rebate of unearned finance charges, note 13 *supra,* is irrelevant to our inquiry. This approach has been adopted in several cases.[25] *Barrett v. Vernie Jones Ford, Inc.,* 4 CCH Consumer Credit Guide ¶ 98,608 (N.D.Ga. Mar. 5, 1975) is representative of this view:

> Here the defendants have asserted a right to collect the [unearned finance] charge. While it may be true that the charge cannot be enforced in the state courts and that common sense dictates that the defendant will make no effort to collect the charge this does not alter the fact that he has asserted a right to collect the charge and therefore must properly disclose its existence.

In our opinion, Pennsylvania's rebate provision is relevant to our inquiry. Statutory provisions of the state, in which the contract is executed or performed become a part of the contract. *Von Hoffman v. City of Quincy,* 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1866). In *Von Hoffman,* the Supreme Court stated the general rule that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms."[26] Thus, the rebate of the unearned finance charge required by Pennsylvania law is a term of the acceleration clause contained in paragraph 20 of the retail installment contract. *See Hamlet v. Beneficial Finance Co.,* Civ. No. C74–821 (N.D.Ga. Recommendations of Special Master, Nov. 4, 1974). Further, the method of rebate of the unearned finance charge,

---

24. *See, e. g., Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.1974); *Barksdale v. Peoples Financial Corp.,* 393 F.Supp. 112 (N.D.Ga. Recommendations of Special Master, Sept. 5, 1974); *Pollock v. Avco Financial Serv., Inc.,* 4 CCH Consumer Credit Guide ¶ 98,766 (N.D.Ga. Recommendations of Special Master, July 1, 1974).

25. *See, e. g., McDaniel v. Fulton Nat'l Bank,* Civ. No. C74–244A, 395 F.Supp. 422 (N.D.Ga. 1975); *Barrett v. Vernie Jones Ford, Inc.,* Civ. No. C74–1502A, 395 F.Supp. 904 (N.D.Ga. 1975); *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga.1975). *But see Grant v. Imperial Motors,* Civ. No. 3146 (S.D.Ga. Dec. 4, 1974).

26. *See Farmers & Merchants Bank v. Federal Reserve Bank,* 262 U.S. 649, 660, 43 S.Ct. 651, 67 L.Ed. 1157 (1923); *N. C. Freed Co. v. Board of Governors of Fed. Reserve Sys.,* 473 F.2d 1210, 1215 (2d Cir.), cert. denied, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *Gardner & North Roofing & Siding Corp. v. Board of Governors of Fed. Reserve Sys.,* 150 U.S.App.D.C. 329, 464 F.2d 838, 842 (1972).

which must be disclosed under section 226.8(b)(7) of Regulation Z,[27] was properly set forth in paragraph 15 of the contract.[28]

■■■■ Plaintiffs' final argument is that the intent of the Truth in Lending Act—to enable consumers to compare available credit terms and to ensure the informed use of credit—requires disclosure of the McCrackin-Sturman's right of acceleration. It may indeed be true, as plaintiffs argue, that some borrowers do not know that a creditor can require the entire debt to be due upon default, or that other consequences may flow from default. However, no matter now desirable we might think it to underscore a creditor's right to accelerate payment upon default, the question to which we are, of course, limited is whether the specific provisions of the Truth in Lending Act or Regulation Z require inclusion of this significant right in the disclosure statement.[29] As we have indicated above, neither section 128(a)(9) of the Act nor section 226.8(b)(4) of Regulation Z require disclosure of a right of acceleration where the creditor is required to rebate the unearned portion of the finance charge.[30]

## IV

Accordingly, we reverse the order of the district court granting summary

judgment against McCrackin-Sturman at Appeal No. 75–1660 and remand to that court for further proceedings consistent with this opinion. Further, we dismiss the appeals at Nos. 75–1659 and 75–1661 for lack of an appealable order.

The parties will bear their own costs.

27. Note 9 *supra*.

28. *See* note 5 *supra*. Paragraph 15 of the retail installment contract describes the method of rebate in the event of prepayment. Since we consider acceleration to be essentially a prepayment and since the method for rebate for acceleration was the same as that for voluntary prepayment, it was unnecessary to include a separate provision delineating the method of rebate in the event of acceleration. *See Grant v. Imperial Motors, Inc.*, Civ. No. 3146 (S.D.Ga. Dec. 4, 1974); *McDaniel v. Fulton Nat'l Bank*, 4 CCH Consumer Credit Guide ¶ 98,630 (N.D.Ga. Mar. 5, 1975); Federal Reserve Board Staff Opinion Letter No. 851, 4 CCH Consumer Credit Guide ¶ 31,173 (Oct. 22, 1974).

29. *McDaniel v. Fulton Nat'l Bank*, 4 CCH Consumer Credit Guide ¶ 98,683 (N.D.Ga. Sept. 19, 1974); *Pugh v. Am. Tractor Trailer Training, Inc.*, Civ. No. 14,109 (D.Conn. Apr. 10, 1974); *see Stavrides v. Mellon Nat'l Bank & Trust*

*Co.*, 353 F.Supp. 1072 (W.D Pa.), *aff'd*, 487 F.2d 953 (3d Cir. 1973).

30. At oral argument, plaintiffs advanced a new theory in support of McCrackin-Sturman's liability. They argued that the existence of McCrackin-Sturman's right of acceleration created a possible additional due date for repayment, which date was required to be disclosed by section 128(a)(8) of the Act and section 226.8(b)(3) of Regulation Z. These sections state that a creditor must disclose the "number, amount, and due dates or periods of payments scheduled to repay the indebtedness." Since apparently the district court was not presented with this argument and since neither the plaintiffs nor McCrackin-Sturman or Ford Motor Credit briefed this point on appeal, we decline to reach the merits of plaintiffs' newly advanced contention. On remand, the district court will have an opportunity to consider this contention after it has been properly briefed and argued by the parties.