**Thomas Goldtooth BEGAY, Plaintiff-Appellee,**

v.

**ZIEMS MOTOR COMPANY, Defendant-Appellant.**

No. 75–1694.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 17, 1976.

Decided Feb. 28, 1977.

Alan Taradash, Window Rock, Ariz. (Fred P. Krasner of DNA—People's Legal Services, Inc., Chinle, Ariz., on the brief), for plaintiff-appellee.

* Of the District of Kansas, sitting by designation.

1. Consumer Credit Protection Act, 15 U.S.C. §§ 1601–65 (1970).

Richard L. Gerding, Farmington, N.M., (Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, N.M., on the brief), for defendant-appellant.

Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge.*

PER CURIAM.

This suit was brought under the Truth in Lending Act[1] and Regulation Z[2] to recover damages, inter alia, for alleged failure of the seller to disclose accurately and meaningfully the amount of any default, delinquency or similar charges payable in the event of late payments in connection with the plaintiff's purchase of a 1974 Ford half ton pickup truck. Our primary question is whether the acceleration provisions in the sales contract permitting the seller, on default of an instalment payment and in other events "to declare all amounts due or to become due to be immediately due and payable," and allowing the seller-creditor to retain unearned finance charges following acceleration constitute "charges" which are required to be disclosed in a manner required by the Act and the regulation.

The complaint alleged several grounds for recovery but, as the case comes to us, only the claim concerning the acceleration clause and the provision on unearned finance charges need be considered. The defendant's answer denied any violation of the Act or the regulation, while admitting the use and execution of the contract attached to the complaint. The plaintiff moved for summary judgment on the basis of an affidavit, the pleadings and a deposition on file. Defendant responded, opposing summary judgment and submitting opposing affidavits.

The trial court granted summary judgment for the plaintiff. The court's memorandum opinion found that the contract en-

2. 12 CFR §§ 226.1–.1002 (1973).

tered into "contains an acceleration clause in the event of default which constitutes a charge payable on late payments. The acceleration clause is located on the reverse side of the contract."[3] The opinion stated that no ruling was made as to other grounds for recovery claimed by the plaintiff as there appeared to be factual disputes which would require trial as to them. The opinion concluded that "[t]he plaintiff is entitled to summary judgment on the sole ground that the form of the contract does not comply with the law and regulations." (R. 27).

On the basis of the disclosure violation, judgment was entered for plaintiff for $1,000 as provided in the Act. The court said that due to the technical nature of the violation, judgment would only be given for such statutory damages and costs.

### The contractual transaction between the parties

The facts which we feel to be material are not in dispute. They are the essentials of the transaction as alleged by the complaint and admitted by the answer.

3. When we later discuss the contract in more detail we will detail the disclosures on the front of the contract and the acceleration provisions on the reverse side of the contract. The acceleration provisions were not on the same side of the contract and above or adjacent to the place for the customer's signature, nor were they on one side of a separate statement which identified the transaction. See 12 CFR § 226.8(a) (1973).

4. The complaint alleged in paragraph 8 that the plaintiff purchased the vehicle primarily for personal, family, household or agricultural purposes. The answer stated that defendant was without knowledge as to the truth of these allegations and therefore denied them. (R. 12). Our record contains the complaint with the contract attached as an exhibit, the answer, an initial pretrial report, the memorandum opinion and judgment granting summary judgment, but does not contain the affidavits, plaintiff's deposition, or any other evidentiary matter. Thus our record does not show how the allegation and denial concerning personal use were treated in the evidentiary material submitted with the summary judgment motion and response. We do not, however, feel there is any issue before us on the matter of personal use. The

On December 11, 1973, plaintiff Begay entered into a credit transaction with the defendant Ziems for the purchase from defendant of a new 1974 Ford half ton pickup truck. A finance charge was imposed in the transaction for the extension of credit. At the time the transaction was consummated the plaintiff was directed by an employee of the defendant to sign a document entitled "New Mexico Automobile Retail Installment Contract." The plaintiff signed the contract as directed.

On its front side, the contract provided for the purchase of the vehicle "on a deferred payment price basis . . ." for "personal" use,[4] "upon the terms and conditions set forth on the face and reverse sides hereof . . ." Also on the face of the contract and above plaintiff's signature there was a section entitled "DETAILS OF TRANSACTION (INCLUDING DISCLOSURES REQUIRED BY FEDERAL LAW)".[5] That disclosure section showed these details: a cash price of $4,327.00, with a cash down payment of $600 and a trade in of $800, making a "Total Down Payment" of $1,400; an unpaid balance on the cash price of $2,927; other charges, not including

initial pretrial report showed no contention in that regard by the defendant and defendant's brief on appeal raises no question concerning the point. For purposes of the appeal we therefore accept the statement in the trial court's opinion that "[t]he plaintiff purchased the vehicle primarily for personal, family, household or agricultural purposes." (R. 26).

5. The "Details of Transaction" provisions read in part as follows:

```
                    DETAILS OF TRANSACTION
           (INCLUDING DISCLOSURES REQUIRED BY FEDERAL LAW)
(1) Cash Price*                              $      4327.00    (1)
      Cash Down Payment       $   600.00
      Trade In (See Opposite) $   800.00
(2) Total Down Payment                       $      1400.00    (2)
(3) Unpaid Balance of Cash Price
      (Difference between items 1 & 2)       $      2927.00    (3)
(4) Other Charges
      Optional Insurance
      (See Opposite)          $   969.65
      Official Fees           $    15.00
      Taxes (Not Included
      in Cash Price)          $   none
      License, Title &
      Registration Fees       $   none
              Total Other Charges            $       984.65    (4)
(5) Unpaid Balance - Amount Financed*        $      3911.65    (5)
(6) FINANCE CHARGE                           $       951.50    (6)
(7) ANNUAL PERCENTAGE RATE    14.55    %(7)
(8) Total of Payments*(Sum of items 5 & 6) $ 4863.24    (8)
(9) Payment Schedule·  Buyer hereby agrees to pay to Seller the
      Total of Payments(item 8 above) in 35 monthly instalments
      of $ 135.09 each and one final instalment of $ none on the
      like day of each month commencing  1/25  1974 , or, if no
      date is specified, one month after the date of this contract.
```

any finance charges, totalled as $984.65, giving an unpaid balance and amount financed of $3,911.65; a finance charge of $951.59 and annual percentage rate of 14.55%; and a provision that the buyer agreed to pay the total of payments—$4,863.24—in 35 monthly instalments of $135.09.

The "DETAILS OF TRANSACTION" on the front of the contract also contained provisions in paragraph 12 on "Delinquency Charges," stipulating that the buyer agreed to pay a delinquency charge of 5% or $5.00, whichever was less, on any installment in default for over 10 days, and collection expenses. Paragraph 14 on "Prepayment Rebate" provided that the buyer may prepay his obligations in full at any time prior to maturity of the final instalment and that if he does so, he shall receive a rebate of the unearned portion of the "Finance Charge."[6] And Paragraph 15 of the disclosures stipulated that the additional terms and conditions set forth on the reverse side were part of the contract and incorporated by reference.

The relevant part of the additional terms and conditions on the reverse side of the contract, where there was no space for a buyer's signature, is paragraph 19 on "Default."[7] Among other things, it provided that on the occurrence of default or certain other events, the *"Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable . . ."* (Emphasis added). The paragraph further stated that the seller shall have the rights of a secured party under the Uniform Commercial Code, including the right to repossess. And it was stated that the seller has the right to retain all payments made prior to repossession "and Buyer shall remain liable for any deficiency to the extent permitted by law."

The complaint made no averment that the plaintiff was ever in default or that any assertion of the right of acceleration had been made for any reason by defendant Ziems.

### The acceleration clause and the unearned finance charges

In challenging the summary judgment against it, defendant essentially argues that the trial court erred in holding that the default or acceleration provisions on the

6. Paragraph 14 of the "DETAILS OF TRANS-ACTION" read as follows (R. 10):

(14) Prepayment Rebate: Buyer may prepay his obligations under this contract in full at any time prior to maturity of the final instalment hereunder, and, if he does so, shall receive a rebate of the unearned portion of the Finance Charge computed under the sum of the digits method subject to retention by Seller of a minimum Finance Charge of $25.00. No rebate will be made if the amount thereof is less than $1.00.

7. Paragraph 19 reads as follows (R. 11):

19. DEFAULT
Time is of the essence of this contract. In the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or, fails to comply with any other provision hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or Seller deems the Property in danger of misuse or confiscation, or Seller otherwise reasonably deems the indebtedness of the Property insecure, *Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and*

*payable* and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale. Upon request Buyer shall deliver the Property to Seller at a place designated by Seller. Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for any deficiency to the extent permitted by law. Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession. Buyer agrees to pay reasonable attorneys' fees (15% if permitted by law) and court costs and other reasonable expenses incurred by Seller in effecting collection, repossession or resale hereunder as permitted by law. Seller's remedies hereunder are in addition to any given by law and may be enforced successively or concurrently. Waiver by Seller of any default shall not be deemed a waiver of any other default. (Emphasis added).

reverse side of the contract were required disclosures. Defendant says the holding in *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill.) and similar cases that "charges" include acceleration clauses is unsound. Defendant says that considered in the context of the phrase "default, delinquency, or similar charges," the acceleration provisions are not covered, that acceleration imposes no additional "charges" on the buyer, and thus the provisions on acceleration were not required disclosures.

Our question concerns the requirement in the Act that in consumer credit sales not under an open end credit plan the creditor shall disclose, inter alia, "[t]he default, delinquency, or similar charges payable in the event of late payments." 15 U.S.C. § 1638(a)(9) (1970). The implementing provisions of Regulation Z further stipulate that there be disclosed ". . . [t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." 12 CFR § 226.8(b)(4) (1973).[8]

In *Garza v. Chicago Health Clubs Inc.,* supra, the court considered general definitions of the term "charges," and the purpose of the Act and the regulation to inform consumers of credit costs and terms so that they can effectively choose between sources of credit. On these considerations the court held the acceleration of the balance of the debt should be considered a "charge." Id. at 959.[9] The court's reasoning was not said to be grounded on the fact that the contract involved there made no provision for a partial refund of the finance charge in the event of acceleration.

Several opinions since *Garza* have rejected its interpretation of "charge." In *Martin v. Commercial Securities Co., Inc.,* 539 F.2d 521 (5th Cir.), the Fifth Circuit recently reviewed the cases and interpretive materials and held an acceleration clause not to be subject to the disclosure requirements, saying there is an absence of any reference to acceleration clauses in "the Act, the Regulations, or the Official Interpretations of the Federal Reserve Board," although such clauses are a common feature of instalment notes and are traditional creditors' remedies. Id. at 524. The court disagreed with the liberal interpretations of the term "charges" in the *Garza* case and in *Meyers v. Clearfield Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.), reversed, 539 F.2d 511, 519, based on the Congressional findings and declaration of purpose in the Act. See 15 U.S.C. § 1601 (1970).

The Third Circuit in *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, also declined to hold an acceleration clause within the disclosure requirements of the Act. The court did point out that state law required a rebate immediately of the entire unearned portion of the finance charge if the time balance was liquidated before maturity by repossession and resale, or other means. Id. at 265 n.13. We do not feel this to be a significant point for our purposes, as we will discuss later.

We are persuaded that the view taken by the Fifth Circuit in *Martin v. Commercial Securities Co., Inc.,* supra, is the proper one on the merits of the question before us. Such an acceleration provision is a universal one, as *Johnson v. McCrackin-Sturman Ford, Inc.,* points out, supra, 527 F.2d at 264. The Federal Reserve Board has issued no regulation on the problem, despite the rather extensive litigation on the question. In these circumstances we are of the view that there is no additional "charge" in the acceleration provision. The total debt is disclosed, and this is the amount due on acceleration. (See note 5, supra, showing the "Unpaid Balance of Cash Price," the "Finance Charge," and "Total of Payments

---

**8.** As noted, the acceleration clause in our case was on the reverse of the contract and not on the same side of the page and above or adjacent to the place for the customer's signature, nor was it on one side of a separate disclosure statement which identified the transaction. Thus disclosure in a prescribed manner was not made, 12 CFR § 226.8(a) (1973), if disclosure of the acceleration clause was required.

**9.** Similar reasoning was expressed in, *e. g., Kessler v. Associates Financial Services Co. of Hawaii, Inc.,* 405 F.Supp. 122, 126 (D.C.Hawaii).

. . .". The point is made in the dissent that some of this total may be unearned interest, but we view this as a matter to be resolved in litigation on the note.

There is a 1974 Staff Opinion letter issued by the Director which takes the view that where a creditor does not rebate unearned finance charges under disclosed rebate provisions, any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a "charge" which should be disclosed. See Staff Opinion Letter No. 851, Oct. 22, 1974, 4 CCH Consumer Credit Guide ¶ 31,–173. We do not view the letter as such a construction or interpretation as to constitute an official interpretation, and it represents no more than the Director's view. We agree with the *Martin* opinion that the letter is not persuasive and that we should leave it to the Board to make such a disclosure requirement explicit by regulation. As the Fifth Circuit concluded, 539 F.2d at 529:

> . . . in the absence of a regulation requiring it, failure to disclose an acceleration clause and the lender's rebate policy with respect thereto in an installment credit transaction does not give rise to a claim for statutory damages.

Accordingly, the judgment is reversed and the case is remanded for further proceedings on the plaintiff's remaining claims.

HOLLOWAY, Circuit Judge, dissenting:

I respectfully dissent and would affirm.

The undisclosed acceleration provision in paragraph 19 on "Default" says unequivocally that if the buyer defaults on any payment, and in certain other circumstances, the *"Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable."* See n.7, ante at 1247. To me, this means beyond doubt that the seller-creditor has reserved and can assert the right in such a case to accelerate the entire debt, including the unearned finance charges in full, and that the creditor then can collect all such unearned finance charges.

This is not only the assertion of a "remedy" by way of acceleration but instead it spells out the obligation of the debtor to pay additional, specific pecuniary sums resulting from the fact that the finance charge was computed on the full credit period to maturity, which is however, shortened by acceleration. See *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 265–66 (3d Cir.).

I feel that acceleration clauses which include such provisions allowing unearned finance charges to be collected from the debtor on acceleration come within the reach of the disclosure requirements for "default, delinquency, or similar charges payable in the event of late payments . . .", 15 U.S.C. § 1638(a)(9) (1970), and within the similar terms of Regulation Z covering "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." 12 CFR § 226.8(b)(4) (1973). See *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904, 909 (N.D.Ga.); *McDaniel v. Fulton National Bank,* 395 F.Supp. 422, 428 (N.D.Ga.). To me, interpretation of the statute and the regulation as requiring disclosure of such terms is in accord with the Congressional purpose of obtaining ". . . meaningful disclosure of credit terms . . ." 15 U.S.C. § 1601 (1970); see *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 377, 93 S.Ct. 1652, 36 L.Ed.2d 318.[10] And this conclusion is also supported by a Federal Reserve Board Staff Opinion Letter.[11]

---

**10.** See also S.Rep. 392, 90th Cong., 1st Sess. 2–3; H.R.Rep. No. 1040, 90th Cong., 1st Sess. 9 (1967), U.S.Code Cong. & Admin.News 1968, p. 1962.

**11.** See Federal Reserve Board Staff Opinion Letter No. 851, Oct. 22, 1974, 4 CCH Consumer Credit Guide ¶ 31,–173, reproduced in the appendix to this dissent, which stated in part:

> . . . On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.-8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a

Defendant Ziems argues that it properly disclosed, as required by Regulation Z, 12 CFR § 226.8(b)(7), the rebate provisions for payments made prior to maturity of the obligation in paragraph 14 of the contract. (See note 6, ante at 1247). Defendant says that this part of the contract and state law, discussed below, required credit to the buyer of the unearned portion of the finance charge if the acceleration option were exercised (there having been no default in this case), and that since the buyer would not be required to pay an additional amount if the acceleration option were exercised, there is no need to disclose the right of acceleration (Brief for Defendant-Appellant, 11–12). However, this paragraph, which was in the disclosures, dealt only with voluntary prepayment by the debtor where the ". . . [b]uyer may prepay his obligations. . ." It revealed nothing about the provisions for involuntary acceleration by the seller in paragraph 19 on the back of the contract, which contain no terms for the rebate of unearned finance charges.

In addition, defendant says that rebate of unearned charges is required by the New Mexico Motor Vehicle Sales Finance Act. See New Mexico Statutes Annotated § 50–15–9 (1953). The statute makes provision, however, only that the "buyer may pay in full" notwithstanding the provisions of a contract and then may receive a refund credit of a portion of the finance charge as specified in the statute. It does not include a provision for such a rebate where there is involuntary repossession as did the Pennsylvania statute considered in *Johnson v. McCrackin-Sturman Ford, Inc.,* supra, 527 F.2d at 265 n.13. Since rebate of unearned charges was not required by law or the contract, I feel that disclosure was required of the provisions for acceleration.

I am convinced that where, as here, acceleration carries with it the right to collect

unearned finance charges, disclosure is required. Such provisions come within the meaning of "default, delinquency, or similar charges payable in the event of late payment . . ." If the lighter burden in paragraph 14 of no more than $5.00 for a late payment is a required disclosure where acceleration of the whole debt is not demanded, why should not the heavier burden of all unearned finance charges being collectible as a part of the accelerated debt be disclosed?

## APPENDIX

No. 851

§ 226.8(b) The rebate effects of an acceleration of payments clause should be disclosed in the same manner as if prepayment were voluntary and such clause does not constitute a charge for late payment except to the extent that the creditor retains unearned finance charges in excess of that which was disclosed as being rebated

October 22, 1974

This is in response to your letter of . . . inquiring whether an acceleration clause in an instalment contract is a "charge" payable in the event of late payment within the meaning of § 226.8(b)(4) of Regulation Z and therefore must be disclosed with other required items.

For the purposes of Truth in Lending disclosures, this staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such, the disclosure provisions of § 226.8(b)(7) of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that

"charge" which should be disclosed under § 226.8(b)(4).

Defendant Ziems itself relies on this Opinion Letter as supporting its position that acceleration options are not "charges" as the term is used in requirements for Truth in Lending disclosure (Brief for Defendant-Appellant, 10–11).

no rebate would be made, apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth in Lending Act.

If, under the acceleration provision, a rebate is made by the creditor in accordance with the disclosure of the rebate provisions of § 226.8(b)(7), we believe that there is no *additional* "charge" for late payments made by the customer and therefore no need to disclose under the provisions of § 226.-8(b)(4). On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a "charge" which should be disclosed under § 226.8(b)(4).

Sincerely yours,

Frederic Solomon
Director