Albert CHAPMAN, Debtor, Albert Chapman and John Boyajian, Trustee, Plaintiffs,

v.

RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Defendant.

No. 74–391.

United States District Court, D. Rhode Island.

Jan. 10, 1978.

John Boyajian, Cranston, R. I., for plaintiffs.

William Hague, Providence, R. I., for defendant.

## MEMORANDUM OPINION

PETTINE, Chief Judge.

This case involves questions of interpretation of the Truth-In-Lending Act ("Act"), 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226.1 *et seq.*[1] The plaintiff in a "credit sale" transaction within the meaning of the Act, received from the defendant bank a copy of the note he executed together with a disclosure statement listing various financial items of the sale. In a bankruptcy proceeding, not required to be detailed herein, the defendant bank filed a proof of claim and received distribution as a secured creditor. Subsequent thereto, the plaintiff filed a counterclaim against the bank alleging that the disclosure statement failed to comply with the requirements of

---

**1.** "In the case of a credit sale, . . . the following items, *as applicable, shall be disclosed:*

1) The cash price of the property or service purchased, using the term 'cash price'.

2) The amount of the downpayment itemized, as applicable, as downpayment in money, using the term 'cash downpayment', downpayment in property, using the term 'tradein' and the sum, using the term 'total downpayment'.

3) The difference between the amounts described in subparagraphs (1) and (2) of this paragraph, using the term 'unpaid balance of cash price'.

4) All other charges, individually itemized, which are included in the amount financed but are not part of the finance charge.

5) The sum of the amounts determined under subparagraphs (3) and (4) of this paragraph, using the term 'unpaid balance'.

6) Any amounts required to be deducted under paragraph (e) of this section using, as applicable, the terms 'prepaid finance charge' and 'required deposit balance', and, if both are applicable, the total of such items using the term 'total prepaid finance charge and required deposit balance'.

7) The difference between the amounts determined under subparagraphs (5) and (6) of this paragraph using the term 'amount financed'." Regulation Z, § 226.8(c). (émphasis added)

the Act and Regulation Z in that the defendant failed to use in said statement the precise term "amount financed" and failed to disclose on the face of the statement an acceleration clause together with all the other required disclosures.

Summary judgment was granted by the bankruptcy judge from which the defendant now appeals and argues that in this case, since there was no "prepaid finance charge", or "required deposit balance", the disclosed "unpaid balance" was, therefore, the same as the "amount financed," i. e., it was equal to and referred to as the "unpaid balance" and, therefore, the sequence for credit disclosure of "amount financed" as spelled out in Regulation Z is not "applicable", 12 C.F.R. § 226.8(c)[2]; and that there is no specific requirement in the Act or Regulation Z requiring disclosure of an acceleration right.

■ Viewing the case as one of initial impression, the bankruptcy judge stated that the Act's "avowed purpose" is remedial requiring a liberal construction to achieve its goals. He concluded, after an analysis of various authorities,[3] that the "amount

---

2. The sequence of disclosure used by the bank was as follows:

| | |
|---|---|
| Cash price | $1,605.00 |
| Down payment—cash | −195.00 |
| Unpaid balance of cash price | 1,410.00 |
| Total other charges | +26.21 |
| Unpaid balance | 1,436.21 |
| Finance charge | +340.99 |
| Total of payments | $1,777.20 |

The Note in question contained on its reverse side the following language:
"If Buyer shall default in the payment of any installment due hereunder . . . all installments and other sums remaining unpaid hereunder shall, at the election of the Seller, and without notice to the Buyer, become immediately due and payable . . ." Defendant's brief, p. 3.

3. H.R.Rep.No.1040, 90th Cong., 2d Sess. (1968); 2 U.S.Code Cong. and Admin.News pp. 1962, 1964, 1970 (1968); *N. C. Freed Co. v. Board of Governors of the Federal Reserve System,* 473 F.2d 1210, 1214 (2d Cir. 1973) *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973) ("Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated."); *Johnson v. McCrackin-Sturman Ford,* 527 F.2d 257, 262 (3d Cir. 1975) ("Disclosure is a term of art under the Truth in Lending Act. The Act and Regulation Z provide that as an incident to the extension of credit, the creditor must, in most instances, furnish the credit customer with a separate disclosure statement. 15 U.S.C. §§ 1631(a), 1637, 1638, 1639 (1970); 12 C.F.R. §§ 226.7, 226.8 (1975). This separate statement must set forth, in a straightforward manner and in a meaningful sequence, certain of the terms under which the credit is extended. It is hoped that the credit customer, armed with a list of the credit terms considered most important by Congress, will be well equipped to choose the credit contract that best fits his needs and his ability to repay the loan."); F.T.C. Informal Staff Opinion Letter of July 21, 1971 (". . . a required term must also be used to describe the same amount, whenever (a) that required term is prescribed by the Regulation as descriptive of an amount which is the sum product, or difference of two or more amounts, if the sum, product, or difference is itself required to be disclosed in that transaction; or (b) the required term is prescribed by the regulation as descriptive of an amount required by the Regulation to be used in computing another amount itself required to be disclosed in that transaction . . . The term 'unpaid balance' is required . . . because the Regulation describes the 'unpaid balance' as the sum of the 'unpaid balance of cash price' plus the total of all other charges not included in the finance charge, and requires disclosure of the 'unpaid balance'. The term 'amount financed' is also required to describe (the same amount) because the Regulation requires the amount financed to be used in computing the 'Annual Percentage Rate' . . . It is true that the consumer has the information required so long as the (same amount) is disclosed, and that amount is meaningfully described so long as either term 'unpaid balance' or 'amount financed' is employed . . . However, the consumer, lawyer, scholar, or other interested persons who wish to compare the disclosures with the words of the Regulation for one purpose or another need the term 'unpaid balance' to know that the proper amounts have been used in computing that amount and also need the term 'amount financed' to determine which amount has been used in computing the 'Annual Percentage Rate'. *Without disclosure of both amounts, one or the other of those two described pieces of information will be left to a well educated guess. Therefore, the requirement to employ both terms is not, for legal accounting purposes, so redundant as it may appear for every day use by the consumer in the normal credit transaction.*") (Emphasis added). *Welmaker v. W. T. Grant,* 365 F.Supp. 531, 536 (N.D.Ga. 1972) ("The defendant contends that the phrase 'as applicable' found in 15 U.S.C. § 1638(a) 'dispels any idea of rigid adherence to specific

financed" must be disclosed in precisely the manner prescribed even though it may be equal to and referred to as the "unpaid balance." He also ruled that "the unearned finance charge which Rhode Island Hospital Trust has the legal right to collect upon acceleration is a 'charge' which must be disclosed under § 1638(a)(9) of the Act."

I agree.

### Use of the Precise Term "Amount Financed"

In defense of its position as set forth *supra,* the defendant bank leans heavily on *St. Germain v. Bank of Hawaii,* 413 F.Supp. 587 (D.Hawaii 1976). In that case, in pertinent part, the "[d]efendant urge[d] that the 'unpaid balance' entry set forth in Regulation Z (was) not applicable to his transaction because his contract show[ed] no 'other charges' or 'prepaid finance charges', thereby permitting omission of an 'unpaid balance' entry" *id.* at 609. Relying on the same Federal Trade Commission Informal Staff Opinion Letter of July 21, 1971, cited by the Bankruptcy Judge, *see* n. 3, that court held:

> Under the provisions of the Act and Regulation Z as set forth above, and the interpretation of same by both FRB staff opinion and case decision, where there are no "other charges" or "prepaid finance charges" no sum step is involved from the "unpaid balance of cash price" to "amount financed". Under such circumstances the *"unpaid balance"* entry is "not applicable" under Regulation Z.
> *Id.* at 612 (emphasis added).

Such is not the case before this Court. As plaintiffs' counsel ably argues, there is no implication in *Bank of Hawaii* that the term "amount financed" is not a required disclosure. F.T.C. Opinions and F.R.B. let-

ters may not be models of clarity, but I do not find them to say the "amount financed" which bears "independent significance to a consumer as representative of the amount on which the finance charge and annual percentage rate (is) based", can be omitted. They merely state that, "[I]n the absence of 'other charges' and 'prepaid finance charges' the 'unpaid balance' entry is not applicable." *Id.* at 612.

To this Court it is pragmatically and legally sound to require the standardization of terms. The average buyer in a credit sale is not represented by an attorney who can penetrate what is, to many, the mystique of credit step sequences. It is imperative all creditors be required to standardize the required disclosures, indeed, with total uncomplicated candor to carry out the spirit of the act so that a consumer can intelligently shop for credit. This is all the more important when the final figure might be the same for each of the categories because there was no progression of money in the credit sale.

This Court stated in *Brown v. Providence Gas Co.,* 445 F.Supp. 459 (D.R.I.1976), that it was "unconvinced that the inclusion of the term 'unpaid balance' is required by Regulation Z *in the present case,* even though the contract also omits "unpaid balance of cash price." *Id.* at 464 (emphasis added). It was noted in that case that creditors are given some leeway in preparing their forms so long as the basic purposes of full disclosure were satisfied. Slavish adherence to "talismanic verbiage", serving no substantive purpose, stretches "truth" in "Truth in Lending" to a meaningless filament. In this regard the "as applicable" language found in § 226.8 of Regulation Z is important. It is, therefore, necessary to look to the questioned docu-

---

terminology'. The Court rejects this argument for the reasons stated by Judge Frankel in *Ratner v. Chemical Bank of New York,* 329 F.Supp. 270 (S.D.N.Y.1971). The defendant further asserts that Regulation Z, § 226.8(c)(5) is invalid because: 'A regulation which . . operates to create a rule out of harmony with the statute, is a mere nullity.' *Manhattan General Equipment Co. v. Commissioner of Inter-*

*nal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). The Court however deems the regulation in question in harmony with the statutory scheme it was formulated to implement, amplify, and explain. Thus, the regulation which prescribes specific terminology for the disclosure required by 15 U.S.C. § 1638(a)(5) is not invalid.").

ment as a whole. Here, it must be determined whether or not "amount financed" is applicable and of such significance as to require its precise terminology and recordation in the transaction at issue. Viewed from the pragmatic perspective of the consumer and the special importance "amount financed" has in the determination of the annual percentage rate, the answer must be in the affirmative.

To shop meaningfully, a consumer should not be placed in a position where he can be misled. The standardization of terms is necessary to accomplish this end so that, even in a simplistic way, he has a basis for comparing the offers of competing creditors.[4] For example, this Court feels it is common knowledge that such terms as "prepaid finance charges", "required deposit balance", "unpaid balance", "amount financed" and the like are not fully understood by the borrower. It follows that, if a term such as "amount financed" is omitted because it is the same as "unpaid balance", a consumer can be very realistically disadvantaged in trying to compare the actual amount financed if, in one case, unlike the other, there was a required deposit balance or a prepaid finance charge. It must be realized we seek to protect all consumers including those who are, unfortunately, the least intelligent among us. Conceivably the unscrupulous lender could even mislead such borrowers as to the actual purchase price. If the "amount financed" can be omitted then there is no logical reason why the cash price need not be shown if there are no adjustments to be made. There

would be no reason to disclose another figure. Therefore, there is a real practical purpose for requiring disclosure of the "amount financed". The Court agrees with Judge Gesell who stated:

> Scrupulous adherence to the requirements of the law is necessary to protect the public and to ensure the application of consistent and uniform terminology that is a prerequisite to the informed use of credit. And contrary to defendants' assertion, *it is simply immaterial whether plaintiff in fact was or was not misled, deceived or confused.* (Emphasis added). *Lewis v. Walker-Thomas Furniture Co., Inc.,* 416 F.Supp. 514, 517 (D.C.1976).

The Court does not quarrel with the defendant's contention that significance must be attached to the words "as applicable" in Regulation Z, § 226.8(c), but it knows of no case where it can have or has had meaning so as not to apply to the term "amount financed" which denotes the amount of credit extended and is the basic figure against which the "finance charge" is applied to determine the "annual percentage" rate. This is not a secondary figure; it holds the same importance as the "cash price." Even in cases where both these figures remain the same they must be precisely identified. The Federal Reserve Board fully supports the conclusion that first and final terms of the sequence be disclosed.

> The disclosure required under Section 226.8(b) and (c) as applicable must be supplied to the customer . . . [T]he terms cash price, unpaid balance of cash

---

4. "The Act and the regulations promulgated under the Act by the Federal Reserve Board embody the further principle that full disclosure could be facilitated by requiring industry wide standardization of credit terms and by strictly enforcing industry adherence to the standardized terms. *Palmer v. Wilson,* 359 F.Supp. 1099, 1101 (N.D.Calif.1973) (Zirpoli, J., *vacated and remanded on other grounds,* 502 F.2d 860 (9th Cir. 1974)); see 15 U.S.C. § 1604. The standardization requirement thus enables the consumer 'to compare more readily the various credit terms available to him and avoid the uninformed use of credit' 15 U.S.C. § 1601." *Powers v. Sims and Levin Realtors,* 396 F.Supp. 12, 16–17 (E.D.Va.1975).

"The Federal Reserve Board is authorized by the Act to promulgate such regulations as would fully effectuate the purposes of the Act and effectively discourage the potential use of unscrupulous tactics by those few creditors who would attempt to evade the mandate of the Act. *Charnita, Inc. v. FTC,* 479 F.2d 684, 686 (3d Cir. 1973). Accordingly the Board has promulgated Regulation Z which delineates within the broad congressional outline the circumstances under which creditors must disclose and specifies the disclosures that must be made. 15 U.S.C. § 1638." *Id.* at 16 n. 2.

price, unpaid balance, amount financed, deferred payment price and total of payments would be synonymous in a transaction in which there was no down payment, trade in, other charges, prepaid finance charge, required deposit balance or finance charges. In such cases we recommend that you use the term "Cash price (AMOUNT FINANCED)" to connote the concept intended. . . . All *other* terms would not be applicable.
*Federal Reserve Board Opinion Letter* No. 213, December 16, 1969, (addressing a credit sale situation where several of the terms were identical). (Emphasis added).

Again on September 23, 1971, the Federal Reserve Board, in another credit sale situation where there were no other charges or required deposit balances, stated:

In those circumstances the 'amount financed' would be the same figure as the 'unpaid balance of cash price', and the 'unpaid balance' and the *latter* term could appropriately be omitted. Opinion Letter 536.

The special significance of "amount financed" is further accentuated when we refer to Regulation Z § 226.5(c)(1) which states that:

The regulation Z Annual Percentage Rate Tables produced by the Board may be used to determine the annual percentage rate, and any such rate determined from these tables in accordance with instructions contained therein will comply with the requirements of this section.

It is important to note that three items must be known to compute the annual percentage rate according to these tables: the "finance charge", the "amount financed" and the number of payments. Using the formula in Regulation Z (Annual Percentage Rate Tables, Vol. 1, p. 1) in this case the equation is FC/100 = ($340.99) × 100 divided by (1,436.21): FC/100 = $23.74: for 30 payments this figure becomes $23.81 under the 17.25% column of the Annual Percentage Rate Table of Regulation Z. Without the "amount financed," this computation cannot be made.

True, the defendants may argue that they do not take issue with the method of computation and counter by saying their sequence of disclosure gives the basic amount financed in the "unpaid balance"; they are the same and that all we have done is merely travel in a circle. I do not agree because I do not find it to be the meaningful disclosure intended by 15 U.S.C. § 1601. An annual percentage rate cost is important to a customer and it is the opinion of this Court a specific dollar amount figure, vital to determine such rate, should not be left to any covert interpretation. Indeed, in a case such as this one, disclosure might even be more fully satisfied and be more meaningful if the disclosure statement gave to the customer the exact dollar cost per year.

Simply speaking this is a strange area for the average borrower. Conceivably, if this Court found for the defendant bank, Mr. Chapman, after this experience, could confidently conclude that whenever he sees "unpaid balance" on a disclosure statement it means "amount financed" and be thoroughly confused in another transaction having a prepaid finance charge or a required deposit, which charges, in the sequence, follow the "unpaid balance."

The violations may be technical " . . . but Congress did not intend creditors to escape liability where only technical violations were involved." *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367, 370 (5th Cir. 1970).

### Disclosure of Acceleration Right

Referring next to the disclosure of its right to accelerate, "[t]he defendant acknowledges that if the right to accelerate was a required disclosure, it should have been on the front of the note." Bank's Brief, p. 6. *See* Regulation Z § 226.8(a).

■ The bankruptcy judge relying on F.R.B. Opinion Letter No. 851, October 22, 1974,[5] *Johnson v. McCrackin-Sturman Ford,*

5. "For the purposes of truth-in-lending disclosures, this staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such, the disclosure provi-

*Inc.,* 527 F.2d 257 (3d Cir. 1975) ("acceleration clause" not a "charge" to be disclosed where state law mandates rebate upon acceleration. The Court emphasized it was not "confronted with the question whether the Truth in Lending Act or Regulation Z require disclosure of an acceleration provision under which the creditor is not required to rebate the unearned finance charge"), and *Industrial National Bank of Rhode Island v. Stuard,* 113 R.I. 124, 318 A.2d 452 (1974) (unearned capitalized interest in excess of the legal rate when balance of a promissory note is declared due and payable in full because of default is recoverable) concluded the "unearned finance charge which Rhode Island Hospital Trust has the legal right to collect upon acceleration is a 'charge' which must be disclosed under § 1638(b)(4) of the Act. The defendant's failure to make this disclosure is a violation of the Act." I agree.[6] Under the specific terms of the contract, there is no provision for rebate upon acceleration by default.

The defendant urges this Court to follow the reasoning of *Martin v. Com'l Securities Co., Inc.* 539 F.2d 521 (5th Cir. 1976) (right of acceleration not a charge and so need not be disclosed). With due deference and respect, this Court cannot accept the Fifth Circuit's interpretation as set forth in *Com'l Security Co., Inc.* To me it is not in accord with the stated purposes of the Act " . . . to assure a meaningful disclosure of credit terms . . . " 15 U.S.C. § 1601 and is not in accord with the opinion of the staff of the Federal Reserve Board. *LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir. 1976); *see Powers v. Sims and Levin Realtors,* 396 F.Supp. 12, 18–19 (E.D.Va. 1975).

I agree with Circuit Judge Holloway dissenting in *Begay v. Ziems Motor Co.,* 550 F.2d 1244 (10th Cir. 1977). In a factual situation similar to the one at issue, reserving to the seller creditor the right to accelerate the entire debt including the unearned finance charges,[7] he stated at 1249, 1250:

sions of § 226.8(b)(7) of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that no rebate would be made apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth-In-Lending Act. If under the acceleration provision, a rebate is made by the creditor in accordance with the disclosure of the rebate provisions of § 226.8(b)(7), we believe that there is no additional 'charge' for late payments made by the customer and therefore no need to disclose under the provisions of § 226.8(b)(4). On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a 'charge' which should be disclosed under § 226.8(b)(4)."

**6.** The plaintiff rightfully argues " . . . if the buyer defaulted after making only one payment, he would have to still pay the entire 'Total of Payments' of $1,777.20 since the acceleration clause provides that upon default 'all installments . . . shall . . . become

immediately due.' A different result would obtain if, instead of defaulting on a payment, the buyer chose to prepay the obligation in full. If this were to happen, the buyer, according to the terms of the 'prepayment rebate' provision on the front side of the contract would obtain a partial rebate of the finance charge according to the 'Rule of 78's.' In this particular transaction, if the debtor prepaid the entire obligation on the date the first payment was due, he would receive a rebate of approximately 93.55% of the finance charge, or in this case about $319.00. Thus, on prepayment he would pay a total of $1,458.20. The difference between this and the total of $1,777.20 which the buyer would have to pay if he defaulted is $319.00, and it is this amount which is the 'default, delinquency, or similar charge' that the creditor failed to properly disclose." Plaintiff's brief at 20, 21.

**7.** Paragraph 4 of the reverse side of the note involved in the instant controversy reads in full:

Time is of the essence of this contract. If Buyer shall default in the payment of any instalment due hereunder, or shall fail to comply with any term hereof, or if a proceeding in bankruptcy, receivership or insolvency or for debtor relief shall be instituted by or against Buyer or if Buyer shall make an assignment for the benefit of creditors, or if

I feel that acceleration clauses which include such provisions allowing unearned finance charges to be collected from the debtor on acceleration come within the reach of the disclosure requirements for "default, delinquency, or similar charges payable in the event of late payments . . .", 15 U.S.C. § 1638(a)(9) (1970), and within the similar terms of Regulation Z covering "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." 12 CFR § 226.8(b)(4) (1973). See *Barrett v. Vernie Jones Ford, Inc.*, 395 F.Supp. 904, 909 (N.D.Ga.); *McDaniel v. Fulton National Bank*, 395 F.Supp. 422, 428 (N.D.Ga.). To me, interpretation of the statute and the regulation as requiring disclosure of such terms is in accord with the Congressional purpose of obtaining " . . . meaningful disclosure of credit terms . . " 15 U.S.C. § 1601 (1970); see *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 36 L.Ed.2d 318. And this conclusion is also supported by a Federal Reserve Board Staff Opinion Letter.

[FRB Staff Opinion Letter 851, cited *supra*] . . .

Since rebate of unearned charges was not required by law or the contract, I feel that disclosure was required of the provisions for acceleration.

I am convinced that where, as here, acceleration carries with it the right to collect unearned finance charges, disclosure is required. Such provisions come within the meaning of "default, delinquency, or similar charges payable in the event of late payment . . . " If the lighter burden in paragraph 14 of no more that $5.00 for a late payment is a required disclosure where acceleration of the whole debt is not demanded, why should not the heavier burden of all unearned finance charges being collectible as a part of the accelerated debt be disclosed?

Finally, none of these violations can be described as unintentional. 15 U.S.C. § 1640(c). *Palmer v. Wilson* 502 F.2d 860, 861 (9th Cir. 1974) (omissions and mislabeling of terms were not the result of clerical errors which are the only violations 15 U.S.C. § 1640(c) is designed to excuse). Obviously, there were no clerical errors here.

It appears to this Court that the reasons stated in the bankruptcy judge's opinion are consonant with the weight of authority and the purposes of the Act.

Affirmed.

---

Seller shall have reasonable cause to believe that the car is in danger of misuse or confiscation, all instalments and other sums remaining unpaid hereunder shall at the election of the Seller, and without notice to the Buyer, become immediately due and payable. The payment and acceptance of any sum on account shall not be considered a waiver of such right of election.

Provision for delinquency charges in the note at issue on the front side reads:

If. any instalment is in arrears for ten days or more after the date on which it is due and payable, Buyer shall pay in addition to the full amount of such instalment, a delinquency charge of five percent (5%) of the amount of each such instalment, but not to exceed the sum of Five Dollars ($5.00) in respect to any one of such delinquent instalments. In addition to such delinquency charges, Buyer promises to pay the holder hereof its reasonable attorney fees plus expenses and costs as permitted by law where this contract is referred for collection to an attorney.

As to prepayment rebate, it reads on the front side:

The Buyer has the right to pay in advance all or any part of the unpaid balance of this contract: all such prepayments to be applied upon the instalment or instalments then of the most remote maturity, and obtain a rebate of the FINANCE CHARGE based on the "Rule of 78's."