William **TARPLAIN** and Teresa Tarplain

v.

**BAKER FORD, INC.**

Civ. A. No. 76–0012.

United States District Court, D. Rhode Island.

March 12, 1979.

John Boyajian, Cranston, R.I., for plaintiffs.

Philip M. Weinstein, Providence, R.I., for defendant.

## OPINION

PETTINE, Chief Judge.

This case, before the Court on plaintiffs' motion for summary judgment, requires determination of whether certain provisions of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* (Truth-in-Lending Act) and regulations of the Federal Reserve Board issued thereunder, Regulation Z, 12 C.F.R. § 226.8, were violated by a credit sale contract furnished by the defendant and signed by the plaintiffs. Jurisdiction exists under 15 U.S.C. § 1640 and 28 U.S.C. § 1337.

There are no material issues of fact. The plaintiffs, husband and wife, purchased an automobile from the defendant in March of 1975. In connection with that purchase, the plaintiffs made a $500.00 cash downpayment, a $150.00 cash "pickup payment", and each signed a finance agreement entitled "Rhode Island Automobile Retail Insurance Contract" for the remaining $3550.82 (including $240.82 for credit life insurance and credit accident and health insurance). Payment on this contract was to be in 36 monthly installments of $133.52, for a total, including interest, of $4806.72. The plaintiffs obtained automobile physical damage insurance, as required by the contract, as well as optional credit life and credit accident and health insurance.

The contract was subsequently assigned to the Ford Motor Credit Company, as was the defendant's usual practice. The plaintiffs made all subsequent payments to Ford Motor Credit Company. On or about December 9, 1975, the automobile was stolen, and in due course, the Allstate Insurance Co. made payment to the Ford Motor Credit Company in the amount of $3,872.08. Ford Motor Credit Company then forwarded a check for $671.50 to William Tarplain as a rebate of unearned interest.

The Rhode Island Automobile Retail Installment Contract served as the disclosure statement required by the Truth in Lending Act and Regulation Z. Regulation Z requires that certain information be disclosed on the front of a credit sale contract above the borrower's signature. 12 C.F.R. § 226.8. Plaintiffs allege that the defendant violated the disclosure requirements of Regulation Z (1) by failing to disclose all the default, delinquency or similar charges payable in the event of late payments, as required by 12 C.F.R. § 226.8(b)(4), and (2) by failing to adequately disclose both the nature and extent of the security interest it acquired and a sufficient description of the property subject to such security interest in connection with the extension of credit, as required by 12 C.F.R. § 226.8(b)(5). Because of the result reached on the first question, the Court does not consider or decide the second. A final question exists as to whether damages may be awarded to both plaintiffs separately, or only once to both plaintiffs as a whole.

Regulation Z requires a creditor to disclose:

The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments. 12 C.F.R. § 226.8(b)(4). This regulation implements a similar provision in the statute itself. 15 U.S.C. § 1638(a)(9). The disclosure statement given to the plaintiffs states on its first side:

12. Delinquency Charges: Purchaser hereby agrees to pay a delinquency charge on each instalment (sic) in default for more than 10 days in the amount of 5% thereof or $10.00, whichever is less, plus such expenses incurred by Seller in effecting collection hereunder as may be allowed by law.

Plaintiffs' Exh. A, para. 12.

This clause appears to be the defendant's effort to comply with section 226.8(b)(4) of Regulation Z. However, on the back of the contract, there is an additional provision which states:

19. DEFAULT

Time is of the essence of this contract. In the event Purchaser defaults in any payment or fails to obtain or maintain the insurance required hereunder, or fails to comply with any other provision hereof . . . or Seller otherwise reasonably deems the indebtedness or the property insecure, Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable. . . .

Plaintiffs' Exh. A, para. 19.

Plaintiffs claim that the right to accelerate, under the conditions set forth in paragraph 19, constitutes a default or delinquency charge within the meaning of Regulation Z and the statute, and thus should have been disclosed on the front side of the disclosure statement. They base this argument primarily upon the fact that upon acceleration due to default, the defendant could retain the entire finance charge, even though much of it could be unearned. In response, the defendant interposes several defenses. First, it argues that the right to accelerate and demand payment of the entire debt, including unearned interest, is a remedy which does not result in assessment of an additional charge and therefore is not a delinquency charge. Similarly, defendant suggests that the absence of specific mention of such a common credit contract provision in Regulation Z, indicates that it is not within the disclosures envisioned by the regulation or the statute. Defendant then suggests that even if retention of unearned interest is a "charge" within the meaning of Regulation Z and the statute, no additional disclosure is required unless the creditor's policy regarding retention of unearned interest upon acceleration is different from the policy upon voluntary prepayment, disclosure of which is required by Regulation Z. Finally, the defendant argues that disclosure is not required either because it in fact rebates unearned interest upon acceleration as well as upon voluntary prepayment, or because by the terms of the contract it is required to rebate unearned interest upon acceleration.

This Court recently faced the same issue as in the present case. In *Chapman v. Rhode Island Hospital Trust National Bank*, 444 F.Supp. 439 (D.R.I.1978), we held that when a right of acceleration carries with it the right to collect unearned interest, this fact must be disclosed as a default or delinquency charge within the meaning of Regulation Z, even though the creditor's actual policy was to rebate unearned interest. The Court relied in part upon the fact that Rhode Island allows the retention of unearned interest following acceleration, even though the effective interest rate then becomes usurious. 444 F.Supp. at 445, *citing Industrial National Bank of Rhode Island v. Stuard*, 113 R.I. 124, 318 A.2d 452 (1974). Because the legal right to retain the unearned interest existed, the Court concluded that disclosure was required.

Plaintiffs note that the present case is virtually identical to *Chapman* and argue that the latter decision should control. Defendant, however, argues that the Court should reconsider its decision in light of the

opinions on the same issue in *Griffith v. Superior Ford*, 577 F.2d 455 (8th Cir. 1978); *McDaniel v. Fulton Nat. Bank of Atlanta*, 571 F.2d 948 (5th Cir. 1978) (*en banc*); *St. Germain v. Bank of Hawaii*, 573 F.2d 572 (9th Cir. 1977); *Begay v. Ziems Motor Co.*, 550 F.2d 1244 (10th Cir. 1977); and *Johnson v. McCracken-Sturman Ford*, 527 F.2d 257 (3d Cir. 1975), as well as two interpretations of the Regulation Z by the staff of the Federal Reserve Board, FRB Official Staff Interpretation No. FC–0054, 12 C.F.R. § 226 Appx. (March 21, 1977)[1] and FRB Staff Opinion Letter No. 1208 (July 6, 1977).[2] Alternatively, the defendant argues that the contract should be interpreted as requiring rebate of unearned interest upon acceleration as well as upon voluntary prepayment, and that consequently the disclosure notice for voluntary prepayment suffices as disclosure for acceleration.

Although most of the circuit opinions cited by the defendant were available at the time of *Chapman*, a review of these cases is appropriate, especially inasmuch as some of them construe virtually the same contract as is at issue here. These decisions represent the entire range of possible holdings, from the one extreme that disclosure is never required, on through disclosure if certain conditions exist, to the other extreme that disclosure is always required.

The first extreme is represented by *Begay, supra*, where the Tenth Circuit adopted a "no-disclosure" approach. Construing essentially the same contract as in the present case, the Court held that disclosure of the right to retain unearned interest is never required, relying primarily on the absence of a specific regulation requiring disclosure. However, a strong dissent noted the absence of a state law requiring rebate of unearned interest and the existence of FRB Staff Opinion Letter No. 851 (Oct. 22, 1974) suggesting that retention of such interest is a "charge" within the meaning of Regulation Z and the statute. The extreme approach of the majority has not been adopted by the other circuits; indeed, the dissent's approach was adopted by this Court in *Chapman*.

More typical is the approach taken in *Johnson, supra*, and *Griffith, supra*. In these cases, also both involving essentially the same contract as in the present case, the courts held that the rebate policy need not be disclosed where state law required the return of unearned interest following payment in full due to acceleration. In *Johnson*, however, the Third Circuit emphasized that it did not reach the issue of whether disclosure would otherwise be appropriate. 527 F.2d at 260 n.3. The Eighth Circuit in *Griffith* appears to have taken a slightly broader approach, basing its holding alternatively on the fact that the creditor's actual, though unwritten, policy was to return unearned interest. 577 F.2d at 459. In

---

**1.** Interpretation No. FC–0054 stated that the mere right to accelerate is not a charge which must be disclosed under § 226.8(b)(4). However, it did state that

> . . . if the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed under § 226.8(b)(7) when the customer pays the balance of the obligation upon acceleration, any amounts retained beyond those which would have been rebated under the disclosed rebate provisions do represent the type of charge that must be disclosed under § 226.8(b)(4). FRB Official Staff Interpretation No. FC–0054, 12 C.F.R. § 226 Appx. (March 21, 1977).

This interpretation has been criticized both for improperly adding a category to the list of required disclosures, and for erroneously concluding that acceleration is a type of prepay-

ment and that consumers will realize the prepayment rebate provisions apply to acceleration as well. *See* Comment, Acceleration Clause Disclosure Under the Truth in Lending Act, 77 Col.L.Rev. 649, 665–68 (1977).

**2.** This letter provided in part:

> The fact that the contract is silent concerning rebate upon prepayment after acceleration is not determinative of the issues; the question is whether in fact the creditor does or does not rebate upon prepayment after acceleration in accordance with the rebate method shown on the disclosure statement. In this sense, then, the individual creditor's policy determines whether there is a violation of the act and regulation.
> FRB Staff Opinion Letter No. 1208 (July 6, 1977).

addition, the *Griffith* court found support for its position in Interpretation No. FC–0054, *supra,* and Staff Opinion Letter No. 1208, *supra.*

In *McDaniel, supra,* the Fifth Circuit *en banc* held that disclosure of rebate policy was required when the policy was different from the policy in the event of voluntary prepayment. Because section 226.8(b)(7) of Regulation Z requires disclosure of rebate policy in the event of voluntary prepayment, the Court saw no reason for a separate disclosure statement for involuntary acceleration unless the policy differed. Like the *Griffith* court, it found support for this view in Interpretation No. FC–0054, *supra.*

Finally, at the opposite extreme from *Begay, supra,* the Ninth Circuit in *St. Germain, supra,* held that disclosure is always required. The Court reached this conclusion by equating acceleration to voluntary prepayment, for which, as already noted, disclosure of rebate policy is required by Regulation Z. It then concluded that if disclosure is required for voluntary prepayment, it is required for acceleration as well.

■ These decisions reflect a considerable split in the circuits. With the exception of *Begay,* however, they seem to recognize that retention of unearned interest constitutes a "charge" within the meaning of the statute and Regulation Z. Where they differ is as to when this charge is subject to the disclosure requirements of the statute and Regulation Z. The generally consistent view of retention of unearned interest as a charge comports with this Court's decision in *Chapman*; furthermore, as already noted, this Court rejected the holding in *Begay* by adopting the dissenting opinion as its own in *Chapman.* 444 F.Supp. at 445–46. Consequently, defendant's initial assertion that the right of acceleration followed by collection of unearned interest does not re-

sult in imposition of a "charge" within the meaning of the statute and Regulation Z must be rejected.

The approach in *Johnson,* whatever its merits,[3] does not apply here, inasmuch as Rhode Island does not require rebate of unearned interest after acceleration. *Industrial National Bank of Rhode Island v. Stuard, supra.* The same is true of *Griffith* to the extent that it relied upon this rationale. However, as noted, *Griffith* also appears to have relied upon the creditor's unwritten policy of actually rebating unearned interest and a FRB staff letter suggesting disclosure in such circumstances is not required. The defendant here has submitted an affidavit to the effect that its policy (actually the policy of the Ford Motor Credit Co.) is to make such rebates and that such a rebate was made in the present case. Consequently, the defendant argues that disclosure should not be required.

■ With all due respect to the Eighth Circuit and the FRB staff, this Court cannot adopt a rule of law based upon a creditor's unwritten policy of not asserting its legal right to retain unearned interest. One of the purposes of the Truth in Lending Act is to inform the borrower of his or her potential liabilities in the event of default; that a creditor might have a policy of not imposing a delinquency charge does not excuse failure to disclose the ability to impose such a charge, or conversely to make an express disavowal of the right to collect it. Whatever the policy of the defendant might be, the fact remains that it is free by the terms of the loan contract to retain unearned interest after acceleration. What is important for the purposes of the Truth in Lending Act is the disclosure of charges the lender asserts a right to collect when he extends credit, not whether or not he actually asserts the right or can legally do so. *See Barnett v. Vernie Jones Ford,* 395

---

**3.** The *Johnson* approach has been criticized for building "into the statute and the regulation a morass of conflicting and uncertain state law", much of which is contradictory to the "con-

gressional intent to require creditors to make meaningful disclosures to consumer debtors". *St. Germain v. Bank of Hawaii,* 573 F.2d 572, 575 (9th Cir. 1977).

F.Supp. 904 (N.D.Ga.1975), *aff'd*, 578 F.2d 1185 (5th Cir. 1978). Indeed, precisely the same argument as here was made by the defendant in *Chapman* and rejected by the bankruptcy judge:

> Whether or not Rhode Island Hospital Trust now states that it gives a rebate upon acceleration and whether or not it in fact does so, do [sic] not change the effect of the contract which gives the creditor the legal right, enforceable in the state of Rhode Island, to collect the unearned finance charge upon acceleration . . . . The unearned finance charge which Rhode Island Hospital Trust has the legal right to collect upon acceleration is a "charge" which must be disclosed under § 1638(b)(4) of the Act.

> *In re Chapman*, Bankruptcy No. BK–74–391, slip op. at 12–13 (D.R.I. Sept. 22, 1976), *aff'd sub nom. Chapman v. Rhode Island Hospital Trust National Bank*, 444 F.Supp. 439 (D.R.I.1978).

Therefore, the Court rejects *Griffith* to the extent that it relies upon a creditor's unwritten policy of returning unearned interest after acceleration.

■ Finally, the approach taken by *McDaniel, supra*, while superficially appealing, adds an unwarranted degree of complexity to the analysis of these cases. The requirement to disclose default charges should not turn on whether the creditor's right to retain unearned interest following acceleration after default differs from his right to retain unearned interest following voluntary prepayment; if there is a right to retain such unearned interest at all, it is a default charge and should be disclosed, whether more, less, or the same is retained in comparison with voluntary prepayment. Furthermore, the *McDaniel* approach assumes that "the consumer will be aware that the prepayment rebate provisions are applicable to acceleration as well"; [4] such

an assumption not only seems unwarranted, but also appears contrary to the Truth in Lending Act policy favoring full, clear, and complete disclosure to consumers.

■■ The Court recognizes that Interpretation No. FC–0054, *supra*, and Staff Opinion Letter No. 1208, *supra*, provide considerable support to the position taken by the courts in *McDaniel* and *Griffith*. Normally such interpretations are entitled to deference by the courts. As one commentator has noted, however, Interpretation No. FC–0054 involves both an interpretation of regulatory language and an interpretation of the statute itself. While an agency's interpretation of its own regulations is entitled to great weight, only "mere deference" is appropriate for an interpretation of statutory language.[5] Consequently, while the staff interpretations are entitled to some deference, to the extent that they are inconsistent with the statute, the Court need not follow them.

■ Both Interpretation No. FC–0054 and Staff Opinion Letter No. 1208 recognize that retention of unearned interest is a "charge" within the meaning of 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.8(b)(4) which should be disclosed. There is no statutory basis, however, for then concluding that such a charge need only be disclosed in certain circumstances, *i. e.*, when it is actually imposed and imposed in a manner different from that applied to voluntary prepayment. Nothing in the statute or Regulation Z indicates that any of the disclosure requirements are optional at any time; the statute simply states that a creditor "shall disclose . . . . (9) The default, delinquency, or similar charges payable in the event of late payments," 15 U.S.C. § 1638(a), and Regulation Z is similarly unequivocal. Such mandatory language requires disclosure of charges imposed upon late payments without reference to whether

---

4. Comment, Acceleration Clause Disclosure Under the Truth in Lending Act, 77 Col.L.Rev. 649, 668 (1977).

5. *Id.* at 665.

or not they are collected.[6] Furthermore, it is contradictory to require disclosure of the rebate policy for voluntary prepayment, *see* 15 C.F.R. § 226.8(b)(7), but not for involuntary acceleration. The average consumer cannot be expected to realize that absent a clause to a different effect, voluntary prepayment is assumed to be the same as involuntary acceleration.[7] Consequently, the Court concludes that it is not bound by the FRB staff interpretations.[8]

■ Defendant's final argument, that the Court should interpret the contract as requiring rebate of unearned interest upon acceleration, must also be rejected. This argument apparently asks the Court to equate voluntary prepayment with acceleration, consequently making the clause requiring rebate upon voluntary prepayment applicable to acceleration as well. Nothing in the contract, however, indicates a connection between the two methods of early payment; indeed, the fact that the clause for voluntary prepayment is disclosed on the front of the contract, while the acceleration clause is on the back (the very issue in this case), demonstrates the lack of connection between the two. Had the defendant truly intended to incorporate into the contract required rebate of unearned interest following acceleration, it would have been a simple matter to do so. The Court will not now read such a provision into the contract solely to allow the defendant to escape liability. Furthermore, even if the Court did so interpret the contract, defendant might still be in violation of Regulation Z for failure to clearly disclose the obligor's right

to return of unearned interest upon acceleration on the front of the contract. *See* 12 C.F.R. § 226.8(a)(1).

■ In conclusion, the Court finds that neither supervening case law, nor Official Staff Interpretation No. FC–0054, *supra*, nor Staff Opinion Letter No. 1208, *supra*, warrant modification of the rule established by the Court in *Chapman v. Rhode Island Hospital Trust National Bank, supra.* Therefore, the Court holds that 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.8(b)(4) require disclosure of both the legal right to collect unearned finance charges upon acceleration, and the right, if any, to a rebate of such charges upon acceleration.[9]

■ Because the Court finds that disclosure of the defendant's policy regarding rebate of unearned interest charges following acceleration was required, it is not necessary to reach the plaintiffs' other claims that the defendant violated the act by failing to disclose the nature and extent of the security interest which it allegedly acquired in the plaintiffs' automobile damage, credit life, and credit accident and health insurance policies. Only one recovery is possible on a single credit transaction, even if there are multiple violations. 15 U.S.C. § 1640(g); *Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815, 819 (3d Cir. 1976). Consequently, the Court expresses no opinion on the merits of these allegations.

The only remaining issue is the amount of damages to which the plaintiffs are entitled. The plaintiffs argue that they are

---

**6.** Any other approach would be contrary to the purpose of the Act and to common sense. For example, in the present case, the defendant properly disclosed a 5% delinquency charge on payments more than ten days late. The right to impose this charge quite clearly would have to be disclosed even if the defendant normally excused payment of this charge, whether with respect to one individual or as a matter of policy.

**7.** Comment, Acceleration Clause Disclosure Under the Truth in Lending Act, 77 Col.L.Rev. 649, 667–68.

**8.** Although good faith reliance upon FRB staff interpretations is a defense to an action under the Act, *see* 15 U.S.C. § 1640(f), defendant cannot claim this defense inasmuch as the contract was made in 1975, two years before issuance of the interpretations here rejected.

**9.** The manner in which such a rebate is calculated should be included in the disclosure, as is required with respect to rebates following voluntary prepayment. 12 C.F.R. § 226.8(b)(7).

each entitled to recovery of the statutory damages of twice the finance charge or $1,000, whichever is less, plus costs and attorney's fees. *See* 15 U.S.C. § 1640(a). Defendant counters that the maximum recovery per transaction is $1,000, even if there is more than one borrower. Neither the statute nor the legislative history provide clear guidance on this issue, and there is a substantial division of judicial authority. *Compare, e. g., Power v. Sims & Levin Realtors,* 542 F.2d 1216 (4th Cir. 1976); *Vines v. Hodges,* 422 F.Supp. 1292 (D.D.C.1976); and *In re Brown,* Bankruptcy No. BK–75–312 (D.R.I. April 10, 1978) *with Davis v. United Companies Mortgage and Investment of Gretna, Inc.,* 551 F.2d 971 (5th Cir. 1977); *Mirabel v. General Motors Acceptance Corporation,* 537 F.2d 871 (7th Cir. 1976); and *Cadmus v. Commercial Credit Plan, Inc.,* 437 F.Supp. 1018 (D.Del.1977).

The statutory remedy for violations of the Truth in Lending Act provides that

. . . any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . . except that the the liability under this subparagraph shall not be less than $100 nor greater than $1,000;

. . . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determine by the court.

15 U.S.C. § 1640(a).

The legislative history is at best ambiguous as to whether the statutory limit was intended to apply only to each individual borrower, or to limit the total recovery by all borrowers:

Any creditor failing to disclose required information would be subject to a civil suit with a penalty equal to twice the finance charge, with a minimum penalty of $100 and a maximum penalty not to exceed $1,000 on any individual credit transaction.

H.Rep.No.1040, 90th Cong., 2d Sess., [1968] U.S.Code Congressional & Administrative News, pp. 1962, 1976.

Obviously, "individual credit transaction" can be interpreted as meaning the entire transaction, or the act of extending credit to each individual. However, the latter interpretation is preferable, inasmuch as it avoids conflict with the statutory language imposing liability for failure to disclose "with respect to *any person* (emphasis added)."

■■■ William Tarplain and Teresa Tarplain are listed as "Purchaser" and "Co-Purchaser" on the contract in question; consequently both were liable for the loan. Similarly, they both were entitled to receive proper disclosure of the terms of the loan, pursuant to 15 U.S.C. § 1631(a), which provides that

Each creditor shall disclose clearly and conspicuously . . . to each person to whom consumer credit is extended, the information required . . . . *Id.*

The statute does provide that when there is more than one borrower, the creditor need not furnish a disclosure statement to each of them. 15 U.S.C. § 1631(b); *see also* 12 C.F.R. § 226.6(e). However, this has generally been interpreted to be intended merely to reduce paperwork, not to excuse a creditor from making the required disclosure to each borrower. *See Allen v. Beneficial Finance Co. of Gary, Inc.,* 531 F.2d 797, 805–06 (7th Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976).

■■■ Defendant, however, relying on the "individual credit transaction" language in the House Report and the decisions in *Powers, supra, Vines, supra,* and *In re Brown, supra,* argues that the maximum recovery should be $1,000 no matter how many joint obligors there may be, even if disclosure is required to each joint obligor. The Court

does not find these cases persuasive, however. *Powers* relied upon the House Report as indicating a congressional intent to limit the total liability on a credit transaction; as already noted, the language of the House Report is ambiguous, and the *Powers* interpretation is in apparent conflict with the statutory language requiring disclosure to each person to whom consumer credit is extended. 15 U.S.C. § 1631(a). *In re Brown* relied almost entirely upon *Powers.* Finally, the Court in *Vines* appears to have based its conclusion upon the provision that only one statement need be furnished in a multiple borrower situation. As already noted, however, providing one statement does not relieve the creditor from the burden of actually disclosing to each borrower; consequently it does not remove liability to each borrower for failure to disclose. *See Allen v. Beneficial Finance Co. of Gary, Inc., supra.*

The better approach is that taken by the courts in *Mirabel, supra, Davis, supra,* and *Cadmus, supra.* In *Mirabel,* the Seventh Circuit rejected the view that the ability to furnish only one statement of information when there is more than one obligor, exempts the creditor for liability to more than one borrower, instead holding that section 1631(b) only relieved the creditor's paperwork burden. The Court further noted that because the creditor obtains additional security by requiring two signatures, it is appropriate that the creditor's obligations increase commensurately. Finally, it noted the inherent problems of judicial administration that would arise under an interpretation limiting recovery to a single obligor:

> For instance, if one obligor sued would he be allowed the full penalty or only half of it? If granted the full penalty, could the other obligor sue the winner for his half? Which obligor could sue, only the one who received the disclosure statement? How could a court determine as between husband and wife joint obligors which of the two had received the disclosure statement? Congress, in the statute, provided

no answers for these questions and so we can assume that it did not expect these problems to arise.

537 F.2d at 883.

In a slightly different approach, the Fifth Circuit in *Davis* relied upon the express language of both section 1640 stating that a creditor who fails to disclose "to any person is liable to such person", and section 1631(a), requiring disclosure "to each person to whom consumer credit is extended", to conclude that when a creditor fails to fulfill the disclosure requirements of the act with respect to any person, he is liable to that person. If there is a failure to disclose to more than one person, the creditor is liable for each such failure.

In *Cadmus, supra,* the most recent case which the Court has discovered facing this issue, the court adopted the viewpoint of *Mirabel* and *Davis.* This Court finds the analysis in *Cadmus* of the statutory framework particularly persuasive:

> A literal reading of the statute leads to the conclusion that if there are joint obligors, each one should be able to collect the penalty, since the creditor failed to disclose required information to each separate obligor to whom it was required to disclose such information.

> .    .    .    .    .

> There is, however, nothing in the Act which limits the recovery of a "family unit". Rather Section 1640(a) indicates that the duty of the creditor runs to each obligor in a loan transaction. This is not unreasonable. When the creditor has two people jointly liable on a note, the creditor gains additional security. The obligations of the creditor should be commensurate with this increased security. Just as both obligors are liable to the creditor, the creditor should be liable to both obligors for its violations of the Act.

437 F.Supp. at 1021–22.

In view of the language of section 1640(a) and section 1631(a), the practi-

cal considerations noted by the *Mirabel* court, and the remedial character of the act, this Court finds the holdings in *Mirabel, Davis,* and *Cadmus* persuasive, and rejects the conclusions reached in *Powers, Vines,* and *In re Brown.*[10] Consequently, the Court holds that each joint obligor in a credit transaction covered by the Truth in Lending Act may recover for violations of the Act or of Regulation Z.

In conclusion, the Court finds that the defendant violated section 1638(a)(9) of the Truth in Lending Act, 15 U.S.C. § 1638(a)(9), and section 226.8(b)(4) of Regulation Z, 12 C.F.R. § 226.8(b)(4), by failing to disclose to the plaintiffs its right to retain unearned interest following payment in full upon acceleration due to default. Each of the plaintiffs may recover for the defendant's violation of the Act and Regulation Z. The finance charge imposed in the contract at issue was $1255.90. Because twice that amount is greater than the $1,000 statutory limit of 15 U.S.C. § 1640(a)(2)(A), each of the plaintiffs is entitled to recover $1,000 from the defendant. In addition, pursuant to 15 U.S.C. § 1640(a)(3), plaintiffs are entitled to recover a reasonable attorney's fee plus costs.

Plaintiffs' motion for summary judgment is granted. The parties should agree promptly on a schedule for developing the record on the attorney's fee issue.

An order will be prepared accordingly.

---

**10.** *In re Brown* is a prior decision by the bankruptcy court of this jurisdiction. Consequently, to the extent that decision held that there may be only one award of statutory damages per credit transaction, even when there is more than one obligor, it is hereby overruled.